UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MV, by her parent and next friend,
MELINDA VASQUEZ, and
UNITED STATES SOCIETY FOR
AUGMENTATIVE AND ALTERNATIVE
COMMUNICATION, INC.,

         Plaintiffs,

v.

NICK LYON, Director, Michigan Department of
Health and Human Services, in his official capacity,
CHRIS PRIEST, Medicaid Director, Medical Services
Administration, Michigan Department of Health and
Human Services, in his official capacity, and
MICHIGAN DEPARTMENT OF HEALTH AND
HUMAN SERVICES,

         Defendants.

Case No. 15-cv-13065

Honorable Thomas L. Ludington

_____/

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION TO DISMISS, DISMISSING PLAINTIFF MV AND COUNTS IV AND V
OF PLAINTIFFS' AMENDED COMPLAINT, AND DENYING
AS MOOT MOTIONS FOR LEAVE TO FILE SUPPLEMENTAL PAPERS**

Plaintiffs MV, a minor, and the United States Society for Augmentative and Alternative

Communication, Inc. (USSAAC) brought suit under 42 U.S.C. § 1983 against Nick Lyon, the

director of the Michigan Department of Health and Human Services, Chris Priest, the Medicaid

Director at the Medical Services Administration, and the Michigan Department of Health and

Human Services on August 28, 2015. ECF No. 1. MV alleges that Michigan Medicaid's criteria

for coverage of Speech Generating Devices (SGDs) violates the Medicaid Act, 42 U.S.C. §

1396a et seq., the Rehabilitation Act, 29 U.S.C. § 794, and the Americans with Disabilities Act

(ADA), 42 U.S.C. § 12131.

On May 11, 2016, Defendants filed a motion to dismiss (alternatively labeled a motion for summary judgment).[1] ECF No. 20. For the following reasons, Defendants' motion to dismiss will be granted in part and denied in part.

## I.

Plaintiff MV is a twelve-year-old girl with Down syndrome and Type 1 diabetes. Am. Compl. at 3, 11, ECF No. 17. Although MV has received speech therapy, her speech is often unintelligible. *Id.* at 11. Dr. Ann Ratcliff, a speech-language pathologist specialist, has evaluated MV and determined that MV cannot satisfy her daily communicative needs through oral communication. *Id.* at 12. Dr. Ratcliff recommended that MV receive a Speech Generating Device (SGD), which are commonly prescribed for individuals struggling with speech intelligibility. *Id.* SGDs enable users to "generate messages by manually selecting picture symbols or photographs." *Id.* at 13. Plaintiffs allege that a SGD is especially important for her wellbeing because her Type 1 diabetes requires frequent and effective communication to be safely managed. *Id.*

Plaintiff USSAAC is a nonprofit corporation which advocates for the rights of individuals with severe speech impairment. *Id.* at 4. MV is a member of USSAAC. *Id.* Plaintiffs allege that USSAAC's Advocacy Director has spent "approximately 100 to 150 hours" assisting Michigan Medicaid beneficiaries under the age of twenty-one who were denied SGDs because the devices were not needed for rehabilitative or prosthetic purposes. *Id.* Thus, Plaintiffs allege that the

---

[1] The distinction between a motion to dismiss and a motion for summary judgment is not insignificant. When considering a motion to dismiss, a court must accept all factual allegations in the pleadings as true in determining whether the plaintiff has pleaded a cognizable legal claim. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009). When considering a motion for summary judgment, a court must examine the evidence presented by the parties in determining whether there is any genuine dispute over material facts. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). As discussed below, courts have discretion over whether to convert a motion to dismiss to a motion for summary judgment. *Tackett v. M & G Polymers, USA, L.L.C.*, 561 F.3d 478, 487 (6th Cir.2009). However, attaching extraneous evidence to briefs contesting a motion to dismiss generally serves only to confuse the issues presented in the motion to dismiss.

Michigan Department of Health and Human Services has evinced a pattern of denying Michigan Medicaid beneficiaries coverage of SGDs when the devices are not needed for rehabilitative or prosthetic purposes.

Defendant Nick Lyon is the Director of the Michigan Department of Health and Human Services, which is the agency that administers and implements Michigan's Medicaid program. *Id.* at 5. Lyon is responsible for assuring that Michigan's Medicaid program conforms with the requirements of the Medicaid Act. *Id.* Plaintiffs are suing Lyon in his official capacity. *Id.* Plaintiffs are also suing the Michigan Department of Health and Human Services.

Defendant Chris Priest is the Medicaid Director of the Medical Services Administration, which is a division of the Michigan Department of Health and Human Services. *Id.* The Medical Services Administration provides healthcare coverage for Michigan residents who are eligible for Medicaid. *Id.* at 6. Plaintiffs are suing Priest in his official capacity. *Id.*

**B.**

Defendants are jointly responsible for administering Michigan's Medicaid program, which pays for services provided to eligible individuals through contracts with health care providers and managed care organizations. Def. Mot. Dismiss at 2, ECF No. 20. These providers are bound by published Medicaid policies and manuals regarding eligibility for services. *Id.* (citing *Rutherford v. Dep't of Soc. Servs.*, 483 N.W.2d 410, 413 (1991)). Michigan is required to provide "early and periodic screening, diagnostic, and treatment services" for all eligible beneficiaries under twenty-one. Am. Compl. at 7 (citing 42 U.S.C. § 1396a(a)(43)). These mandatory benefits are referred to as EPSDT services. *Id.* If the individual is a "categorically needy beneficiary," the EPSDT provisions require the state to cover any corrective or ameliorative treatment that falls within one of Medicaid's mandatory or optional benefit

categories, regardless of whether that treatment is covered by Michigan's Medicaid plan. *Id.* (citing § 1396d(r)(5)).

Plaintiffs allege, and Defendants do not contest, that SGDs fall within several mandatory Medicaid benefit categories for categorically needy beneficiaries under age twenty-one, including "home health care services." *Id.* at 9 (citing § 1396(a)(10)(D)). Unlike the EPSDT provisions, Michigan's Medicaid plan restricts coverage of SGDs to situations where the device is needed to serve a rehabilitative or prosthetic purpose. *Id.* at 10. The Michigan Medicaid plan does not cover SGDs when needed for "habilitative" purposes. Def. Mot. Dismiss at 3. Rehabilitative and prosthetic treatments and devices are meant to restore an individual to a previous level of functioning or correct a physical deformity, while habilitative treatments and devices simply enable an individual to function in his or her living environment. *Id.* Thus, if a "categorically needy beneficiary" under the age of twenty-one needs a SGD for habilitative purposes, that individual is entitled to receive the SGD only under the EPSDT, not under Michigan's Medicaid plan.

## C.

Plaintiffs allege, and Defendants do not contest, that MV is a categorically needy Michigan Medicaid beneficiary. Am. Compl. at 3. Because the SGD will help MV communicate effectively for the first time, instead of restoring her to a previous level of communicative ability, MV needs the SGD for a habilitative purpose. Plaintiffs further allege that they contacted HealthPlus, the managed care organization supplying Medicaid services to MV, on July 8, 2013, requesting prior approval for a SGD. *Id.* at 14. HealthPlus denied MV's prior approval request, concluding that MV was not entitled to the SGD under Michigan's Medicaid plan because she was not requesting the device for a rehabilitative or prosthetic purpose. *Id.* HealthPlus did not

analyze whether MV was entitled to the SGD, notwithstanding the Michigan Medicaid plan, under the EPSDT.

On November 5, 2014, MV again requested prior approval for a SGD from HealthPlus. *Id.* On November 8, 2014, HealthPlus denied the request by again relying on Michigan Medicaid's requirement that the device be used for rehabilitative or prosthetic purposes. *Id.* at 15. MV then requested a Medicaid fair hearing regarding whether she was entitled to receive the SGD. *Id.* Administrative Law Judge William D. Bond held the hearing on May 1, 2015 and issued a decision affirming HealthPlus's denial of prior approval on June 12, 2015. ALJ Bond also relied solely on Michigan Medicaid's coverage criteria for SGDs.

Defendants admit that the EPSDT required coverage for the SGD in MV's case and that MV was wrongfully denied the SGD. Def. Mot. Dismiss at 4. Prior to serving the complaint in this action, Plaintiff's counsel informed the Defendants of the basis for the complaint. *Id.* The Defendants began working with Molina, the managed care organization which had succeeded HealthPlus in serving MV, to secure a SGD for MV. *Id.* at 5. On November 16, 2015, MV received her SGD. *Id.* Despite receiving the device, MV has proceeded with her suit.

**II.**

A pleading fails to state a claim under Rule 12(b)(6) if it does not contain allegations that support recovery under any recognizable legal theory. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009). In considering a Rule 12(b)(6) motion, the Court construes the pleading in the non-movant's favor and accepts the allegations of facts therein as true. *See Lambert*, 517 F.3d at 439. The pleader need not have provided "detailed factual allegations" to survive dismissal, but the "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell*

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In essence, the pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" and "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678-79 (quotations and citation omitted).

### III.

Defendants make four arguments in their motion to dismiss. First, Defendants argue that both Plaintiffs lack standing to sue and that Plaintiffs' claims are now moot. Second, Defendants argue that Plaintiffs' complaint is barred by res judicata. Third, Defendants argue that Plaintiffs' suit is barred by Michigan's sovereign immunity as guaranteed by the Eleventh Amendment. Fourth, Defendants argue that Plaintiffs fail to state a claim on which relief can be based.

### A.

As an initial matter, both parties have attached multiple exhibits to their briefs supporting and opposing the motion to dismiss. Additionally, Plaintiffs have filed a motion for leave to file a supplemental declaration and brief which includes an updated declaration by Plaintiffs' counsel regarding Michigan Medicaid's ongoing denial of SGDs for habilitative purposes.

A court faced with a Rule 12(b)(6) motion must typically limit its consideration to the pleadings or convert it to a motion for summary judgment under Federal Rule of Civil Procedure 12(d). *Tackett v. M & G Polymers, USA, L.L.C.*, 561 F.3d 478, 487 (6th Cir.2009). Conversion to a motion for summary judgment, however, "'should be exercised with great caution and attention to the parties' procedural rights.'" *Id.* (quoting 5C Charles Alan Wright & Arthur R. Miller § 1366). A court has discretion regarding whether to convert a motion to dismiss to a motion for summary judgment. *Jones v. City of Cincinnati*, 521 F.3d 555, 561–62 (6th Cir. 2008). The Sixth Circuit has held that "documents that a defendant attaches to a motion to

dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Weiner v. Klais and Co., Inc.*, 108 F.3d 86, 88 (6th Cir. 1997).

In addition to the general rule—that a document must be referred to in the complaint and central to the claim—the Sixth Circuit has permitted courts to take judicial notice of some documents of public record. *Passa v. City of Columbus*, 123 F. App'x 694, 697 (6th Cir. 2005). For example, a court may take judicial notice of other court proceedings, including transcripts. *Buck v. Thomas M. Cooley Law Sch.*, 597 F.3d 812, 816 (6th Cir. 2010). However, taking judicial notice of documents has been limited to allow only "the use of such documents . . . for the fact of the documents' existence, and not for the truth of the matters asserted therein." *Passa*, 123 F. App'x at 697 (collecting cases).

Indeed, judicial notice of public records should only be taken for those records "whose existence or contents prove facts whose accuracy cannot reasonably be questioned." *Id.* That is, the Court "must only take judicial notice of facts which are not subject to reasonable dispute." *Id.* "When considering public documents in the context of a motion to dismiss, a court may not accept a document to decide facts that are in dispute." *In re Cardinal Health Inc. Sec. Litig.*, 426 F. Supp. 2d 688, 713 (S.D. Ohio 2006).

The Court declines to convert Defendants' motion to dismiss into a motion for summary judgment. The briefing by both parties primarily contests legal issues. Accordingly, the Court can properly review the motion to dismiss by considering only the pleadings. Because the supplemental declaration which Plaintiffs move for leave to file was not referred to in the complaint, the supplemental declaration cannot be considered in addressing the motion to dismiss. Plaintiffs' motion for leave to file a supplemental declaration and brief, ECF No. 24,

and Defendants' motion for leave to file a brief in response to Plaintiffs' motion, ECF No. 29, will be denied.[2]

## B.

Because jurisdictional issues involving standing and mootness are a "threshold question in every federal case," Defendants' argument that Plaintiffs lack standing will be addressed first. *Miller v. City of Cincinnati*, 622 F.3d 524, 531 (6th Cir. 2010) (quoting *Planned Parenthood Ass'n v. City of Cincinnati*, 822 F.2d 1390, 1394 (6th Cir.1987)).

Art. III, § 2 of the U.S. Constitution limits federal court jurisdiction to "Cases" and "Controversies." The Supreme Court has interpreted Art. III, § 2 as creating the doctrine of standing, which provides that federal jurisdiction exists only if the dispute is one "which [is] appropriately resolved through the judicial process." *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990). For standing to exist, three elements must be satisfied: injury in fact, causation, and redressability. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61(1992). Injury in fact exists when the plaintiff has suffered "an invasion of a legally protected interest" that is both "concrete and particularized" and "actual or imminent," not "conjectural or hypothetical." *Id.* at 560 (citations omitted). Causation exists if the injury is one "that fairly can be traced to the challenged action of the defendant." *Simon v. E. Kentucky Welfare Rights Org.*, 426 U.S. 26, 41 (1976). The redressability requirement is satisfied if the plaintiff's injury is "likely to be redressed by a favorable decision." *Id.* at 38.

### i.

---

[2] The Court takes judicial notice of the fact that Plaintiffs' supplemental declaration provides further support for Plaintiffs' theory that the wrongful denials of SGDs to Michigan Medicaid recipients continue. But Plaintiffs' complaint already alleges a pattern of wrongful denials. *See* Am. Compl. at 4. Because, under the standard of review for a 12(b)(6) motion, the allegations in the plaintiff's complaint are accepted as true, Plaintiffs' supplemental declaration would not change the Court's analysis even if considered.

Defendants argue that MV did not have standing when she filed the suit. Yet, at the time the suit was filed, MV had been denied funding for a device which Defendants admit she was entitled to under the Medicaid Act. *See* Def. Mot. Dismiss at 4–5. This is a cognizable injury. Further, the injury was caused by the Defendants' failure to properly apply the Medicaid provisions and a decision by this Court directing Defendants to provide MV the device she was entitled to would have redressed her injury.

Defendants also allege that MV's claims are moot. Mootness is "'the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).'" *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000) (quoting *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68, n.22 (1997)). "[A] federal court has no authority 'to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.'" *Church of Scientology of California v. United States*, 506 U.S. 9, 12 (1992) (quoting *Mills v. Green,* 159 U.S. 651, 653 (1895)). "The test for mootness is whether the relief sought would, if granted, make a difference to the legal interests of the parties." *Coal. for Gov't Procurement v. Fed. Prison Indus., Inc.*, 365 F.3d 435, 458 (6th Cir. 2004) (quotation marks omitted). "[T]he party asserting mootness bears the heavy burden of persuading' the court that the challenged conduct cannot reasonably be expected to start up again." *League of Women Voters of Ohio v. Brunner*, 548 F.3d 463, 473 (6th Cir. 2008). A defendant cannot meet that burden through "voluntary cessation of a challenged practice" alone. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000). A defendant may moot a case through voluntary conduct "if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to

recur." *Id.* (quoting *United States v. Concentrated Phosphate Export Assn.,* 393 U.S. 199, 203 (1968)).

Courts are more likely to find that wrongful behavior will not recur when the suit involves government defendants who have ceased illegal conduct. *See Mosley v. Hairston*, 920 F.2d 409, 415 (6th Cir. 1990); 13C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*, § 3533.7 (3d ed.). "[S]elf-correction" of "allegedly illegal conduct of government officials" can provide "a secure foundation for dismissal based on mootness as long as it appears genuine." *Ragsdale v. Turnock*, 841 F.2d 1358, 1365 (7th Cir. 1988).

However, if the issue is one which is "capable of repetition, yet evading review, the case will not be dismissed even if the plaintiff's harm has been redressed. *Weinstein v. Bradford*, 423 U.S. 147, 148 (U.S. 1975). A claim is "capable of repetition, yet evading review" if: "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again." *Id.* at 149. Often, the second element exists when the plaintiff has suffered the same injury multiple times. *See Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 594 n.6 (1999) (case not moot because there had been multiple improper institutional placements of the same plaintiffs); *Doe v. Wooten*, 747 F.3d 1317, 1324 (11th Cir. 2014) ("[T]he fact that Mr. Doe has been transferred repeatedly over a period of years supports a finding of likely recurrence.").

Here, Defendants argue that MV's claims were mooted when she received her SGD. Plaintiffs respond by alleging that MV will need to replace her SGD and that Defendants apply the same analysis to requests for repair and replacement as they do initial requests. *See Am. Compl.* at 11. Defendants dismiss MV's suggestion that she might later be denied coverage again

as "pure speculation." Def. Mot. Dismiss. at 16. Plaintiffs allege that several USSAAC members have been wrongfully denied SGDs. Because allegations of fact are construed as true at the motion to dismiss stage, Plaintiffs' allegation that Defendants chronically apply the wrong section of Medicaid policy must be accepted as true. However, Plaintiffs have not alleged a concrete possibility that MV will need to repair or replace the SGD in the future. Further, Defendants have admitted that MV is entitled to SGD coverage, and there is no reason to believe that she will be wrongfully denied a second time, even if she needs to replace or repair the SGD. Defendants' demonstrated intention of ensuring that MV receives the coverage to which she is entitled "appears genuine." *Ragsdale*, 841 F.2d at 1365. They have carried their burden of showing that the wrongful denial will not recur as to MV. Accordingly, MV will be dismissed because her claims are moot.

**ii.**

In contrast, USSAAC does have standing. Associations may have standing to sue independently of their members. *Am. Canoe Ass'n, Inc. v. City of Louisa Water & Sewer Comm'n*, 389 F.3d 536, 544 (6th Cir. 2004). The same three-element test under Art. III is applied to associations. *Id.* An association can establish a sufficiently concrete injury by alleging a "'purportedly illegal act [that] increases the resources the group must devote to programs independent of its suit challenging the action.'" *Hous. Opportunities Made Equal, Inc. v. Cincinnati Enquirer*, 943 F.2d 644, 646 (6th Cir. 1991) (quoting *Spann v. Colonial Vill., Inc.*, 899 F.2d 24, 27 (D.C. Cir. 1990)). *See also Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982) (finding that a "consequent drain on the organization's resources" constituted a sufficient injury for standing).

- 11 -

Associations can also bring actions on behalf of their members, via the doctrine of third-party standing, if: "(1) the organization's 'members would otherwise have standing to sue in their own right'; (2) 'the interests it seeks to protect are germane to the organization's purpose'; and (3) 'neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.'" *Friends of Tims Ford v. Tennessee Valley Auth.*, 585 F.3d 955, 967 (6th Cir. 2009) (quoting *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 343 (U.S. 1977)).

Here, USSAAC has alleged that it has devoted significant time over the past three years assisting minors who were wrongfully denied SGDs by Michigan Medicaid. Am. Compl. at 4. USSAAC anticipates that these wrongful denials will continue and that it will consequently need to continue devoting resources to their redress, instead of other areas of advocacy. *Id.* This is sufficient to establish USSAAC's standing to sue. *See Hooker v. Weathers*, 990 F.2d 913, 915 (6th Cir. 1993) (finding that a single investigation of the defendants by the organization was sufficient devotion of resources to establish standing); *Zynda v. Arwood*, No. 15-11449, 2016 WL 1223352, at *7 (E.D. Mich. Mar. 29, 2016) (finding that a legal aid organization had standing in its own right to challenge erroneous unemployment fraud findings because the wronged individuals were being referred to the organization). Because USSAAC has direct standing, there is no need to analyze whether USSAAC could bring suit on behalf of its members via third-party standing.

USSAAC's claims are also not moot. Defendants assert that the case is moot because they have admitted that SGDs should be covered under the EPSDT and redressed MV's wrongful denial. But Plaintiffs allege that the risk of ongoing harm stems from a chronic misreading of the Medicaid guidelines and that Defendants have not taken steps to stop the

- 12 -

wrongful denials at the initial stage of consideration. Defendants' willingness to correct wrongful denials after the fact does not resolve the obscurity in the Medicaid manual causing the wrongful denials in the first place and thus is insufficient to moot the case. *See Cleveland Branch, N.A.A.C.P. v. City of Parma, OH*, 263 F.3d 513, 533 (6th Cir. 2001) (finding case was not mooted because defendant's "interim actions" had not "completely eradicated" its allegedly discriminatory conduct); *Doe*, 747 F.3d at 1326 (finding case was not mooted because government had failed to unambiguously terminate the challenged conduct). The right to coverage of SGDs should not effectively rely on administrative or judicial review. Because Defendants have not made any changes in their Medicaid policies, USSAAC will likely need to continue devoting resources to resolving wrongful denials of SGDs to minors. Accordingly, USSAAC has standing to bring this suit. Because Defendants' actions have not mooted USSAAC's alleged injury, Defendants' other arguments to dismiss will be considered.

## C.

Defendants next argue that Plaintiffs' claims are barred by res judicata.[3] Defendants do not appear to argue that issue preclusion bars Plaintiffs' suit.[4] Accordingly, the only dispute between the parties is whether Plaintiffs' decision to not appeal the ALJ's decision bars Plaintiffs from now bringing federal claims in federal court that were not raised before the ALJ.

If the full faith and credit statute, 28 U.S.C. § 1738, applies, federal courts must apply the preclusion law of the state in which judgment was rendered. *Marrese v. Am. Acad. of*

---

[3] "The doctrine of claim preclusion, sometimes referred to as res judicata, mandates that if an action results in a judgment on the merits, that judgment operates as an absolute bar to any subsequent action on the same cause between the same parties, with respect both to every matter that was actually litigated in the first case, as well as to every ground of recovery that might have been presented." *Black v. Ryder/P.I.E. Nationwide, Inc.*, 15 F.3d 573, 582 (6th Cir. 1994).

[4] "Issue preclusion, often referred to as collateral estoppel, 'precludes relitigation of issues of fact or law actually litigated and decided in a prior action between the same parties and necessary to the judgment, even if decided as part of a different claim or cause of action.'" *Georgia-Pac. Consumer Prod. LP v. Four-U-Packaging, Inc.*, 701 F.3d 1093, 1098 (6th Cir. 2012) (quoting *Gargallo v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 918 F.2d 658, 661 (6th Cir.1990)).

*Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985). However, § 1738 is not applicable to unreviewed state administrative decisions. *Univ. of Tennessee v. Elliott*, 478 U.S. 788, 794 (1986). When there is no governing statute, federal common-law rules of preclusion apply. *Id.* In *Elliot*, the Supreme Court held that unreviewed state agency factual findings must be given issue preclusive effect in subsequent suits under 42 U.S.C. § 1983. *Id.* at 799. Neither the Supreme Court nor the Sixth Circuit has ruled on the issue presented in this case: whether unreviewed state agency decisions should be given claim preclusive effect in subsequent § 1983 suits. If the answer is yes, then Plaintiffs' claims are barred to the extent Michigan claim preclusion law would bar them. If the answer is no, Plaintiffs' claims are not barred by claim preclusion.

The Fourth, Fifth, and Eleventh Circuits have all held that unreviewed state agency decisions should not be given claim preclusive effect in subsequent § 1983 suits. *See Dionne v. Mayor & City Council of Baltimore*, 40 F.3d 677, 685 (4th Cir. 1994); *Frazier v. King*, 873 F.2d 820, 824 (5th Cir. 1989); *Gjellum v. City of Birmingham*, 829 F.2d 1056, 1065 (11th Cir. 1987). In *Dionne*, the Fourth Circuit reasoned that because claims preclusion "is the much more drastic doctrine" compared to issue preclusion, *Elliot's* rationale should not necessarily be extended. 40 F.3d at 683. The court further reasoned that, under traditional rules of res judicata, claim preclusion is applied only when the claimant had a "fair opportunity" to advance all its claims involving the transaction in a "single unitary proceeding." *Id.* Administrative proceedings typically provide "limited substantive and remedial scope," and therefore would not trigger claim preclusion. *Id.* The *Dionne* court also reasoned that the state court system was an insufficient alternative forum because, if the plaintiff had brought his § 1983 suit there, it would likely have been dismissed for failure to exhaust administrative remedies. *Id.* Further, the *Dionne* court explained that creating a rule of claim preclusion would increase the burden on federal courts

because it would disincentivize individuals from seeking administrative remedies, for fear they would lose the chance to sue in federal court. *Id.* at 684. Finally, the Fourth Circuit noted that § 1983 was enacted to provide individuals a federal forum for protection of federal rights. *Id.* (citing *Monroe v. Pape*, 365 U.S. 167, 180, 81 S. Ct. 473, 480 (1961)).

In *Gjellum*, the Eleventh Circuit likewise emphasized the importance of providing a full adjudication of federal rights and the "limitations of state agencies" in providing that full adjudication. 829 F.2d at 1065. The court also relied on the fact that "claim preclusion, unlike issue preclusion, does not create a risk of inconsistent results in this context" because the federal court would not be disregarding any issues actually litigated and decided by the administrative agency. *Id.* Finally, the *Gjellum* court concluded that not granting unreviewed state administrative decisions preclusive effect would conserve judicial resources. *Id.* at 1070. Likewise, the Fifth Circuit's decision in *Frazier* emphasized that importance of protecting federal rights and the "practical effect of encouraging plaintiffs to seek administrative remedies before turning to the federal courts." 873 F.2d at 824.

Although the Sixth Circuit has not ruled on this issue, several Sixth Circuit decisions suggest that it would adopt the same approach followed by the Fourth, Fifth, and Eleventh Circuits. In *Peterson v. Johnson*, the Sixth Circuit cited *Elliot* in giving preclusive effect to factual determinations made by the state administrative agency. 714 F.3d 905, 918 (6th Cir. 2013). But the court further asserted that "[h]ad the hearing officer purported to make a *legal* conclusion regarding Peterson's federal constitutional rights, our analysis would necessarily be different and we could not likely be so deferential." *Id.* (emphasis in original). As the *Dionne* court noted, claim preclusion is even more drastic than issue preclusion, and if the *Peterson* court was unwilling to simply accept state administrative legal findings, it seems unlikely that it would

have been willing to allow state administrative proceedings to preclude later presentment of federal claims never litigated in the administrative proceeding. Additionally, in *Barnes v. McDowell*, the Sixth Circuit allowed a plaintiff to assert a § 1983 claim after a state administrative proceeding without even analyzing whether the plaintiff was precluded by failing to raise the § 1983 claim during the state administrative and judicial proceedings. 848 F.2d 725, 731 (6th Cir. 1988).

The few federal court decisions which contradict the stance taken by the Fourth, Fifth, and Eleventh Circuits are not persuasive. In *Plough By & Through Plough v. W. Des Moines Cmty. Sch. Dist.*, the Eighth Circuit appeared to adopt the position that an unreviewed administrative decision should be given "the same preclusive effect as the state courts would." 70 F.3d 512, 516 (8th Cir. 1995). However, the claim preclusion analysis in *Plough* is purely dicta, lessening the decision's persuasive value. *Id.* at 516–17 ("Although issue preclusion adequately disposes of Plough's case, claim preclusion does so as well."). Further, the *Plough* decision does not discuss the contradictory decisions issued by the other Circuits or address the legal and policy-based arguments which persuaded those courts.

The decision in *Pappas v. Dazzo* also gave claim preclusive effect to an unreviewed administrative decision. No. 12-12952, 2013 WL 2146711, at *2–3 (E.D. Mich. May 15, 2013). There, the court held that res judicata barred a party from litigating issues and claims in federal court that could have been raised in the administrative proceeding. *Id.* at 3. In so holding, the court applied Michigan preclusion law. *Id.* However, the *Pappas* decision did not address the disagreement among the circuits over whether state preclusion law should be applied in this context.

- 16 -

The approach adopted by the Fourth, Fifth, and Eleventh Circuits is consistent with Sixth Circuit precedent and supported by well-reasoned legal and policy-based arguments. Accordingly, it will be adopted here. The approach ensures that suits alleging federal rights under § 1983 will have a forum and does not incentivize claimants to bypass administrative remedies in favor of going directly to federal court. As the Sixth Circuit implicitly recognized in *Peterson*, state administrative proceedings are often inadequate forums for full protection of federal rights. *See* 714 F.3d at 918 ("Had the hearing officer purported to make a *legal* conclusion regarding Peterson's federal constitutional rights, our analysis would necessarily be different and we could not likely be so deferential.") (emphasis in original). For that reason, allowing an unreviewed state administrative decision to bar a plaintiff from later bringing a § 1983 claim which the administrative agency did not hear would violate both the purpose behind § 1983 and traditional principles of res judicata. Accordingly, Plaintiffs' claims are not barred under the doctrine of res judicata.

## D.

Defendants next argue that Plaintiffs' claim for damages under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, is barred by the Eleventh Amendment. The first question is whether Congress abrogated the States' sovereign immunity by passing the Rehabilitation Act. Congress can abrogate state sovereign immunity by "unequivocally express[ing] its intent to abrogate the immunity . . . and . . . "act[ing] pursuant to a valid exercise of power." *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 55 (1996) (citations omitted).

Congress has clearly evinced the intent to abrogate state sovereign immunity under the Rehabilitation Act. *See* 42 U.S.C.A. § 2000d-7. Further, Congress abrogated state sovereign immunity via § 504 pursuant to a valid exercise of power. Congress can abrogate state sovereign

immunity through statutes which protect against violations of the Fourteenth Amendment, like the Equal Protection Clause. *See Clark v. State of Cal.*, 123 F.3d 1267, 1270 (9th Cir. 1997). The disabled are protected from discrimination by the Equal Protection Clause, *see City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432 450 (1985), and the Rehabilitation Act was enacted to protect the disabled against discrimination. *See Clark*, 123 F.3d at 1270. The Rehabilitation Act was validly enacted under the Fourteenth Amendment. *Id.* Accordingly, the Eleventh Amendment does not bar Plaintiffs' claim for damages under § 504.

## E.

Defendants also argue that Plaintiffs fail to state a claim under § 504 of the Rehabilitation Act and Title II of the ADA.

> The elements of a cause of action under Section 504 are as follows: (1) The plaintiff is a "handicapped person" under the Act; (2) The plaintiff is "otherwise qualified" for participation in the program; (3) The plaintiff is being excluded from participation in, being denied the benefits of, or being subjected to discrimination under the program solely by reason of his handicap; and (4) The relevant program or activity is receiving Federal financial assistance.

*Doherty v. S. Coll. of Optometry*, 862 F.2d 570, 573 (6th Cir. 1988).

Similarly, Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C.A. § 12132. Section 504 and Title II of the ADA "share the same substantive standard," *Jones v. Potter*, 488 F.3d 397, 403 (2007), with the exception of the level of discriminatory intent necessary. *See Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312, 314

- 18 -

(6th Cir. 2012).[5] Defendants argue that Plaintiffs have not alleged that the individuals identified in Plaintiffs' complaint were wrongfully denied SGDs "by reason of" their handicaps.

The "central purpose" of § 504 is to ensure that "handicapped individuals receive 'evenhanded treatment' in relation to nonhandicapped individuals." *Traynor v. Turnage*, 485 U.S. 535, 548 (1988) (quoting *Alexander v. Choate*, 469 U.S. 287, 304 (1985)). The Act does not require that a "benefit extended to one category of handicapped persons also be extended to all other categories of handicapped persons." *Id.* at 549. At best, Plaintiffs allege that Defendants are discriminating against disabled individuals who need SGDs for habilitative purposes in favor of disabled individuals who need SGDs for rehabilitative or prosthetic purposes. *See* Am. Compl. at 22. Plaintiffs have not alleged that Defendants are discriminating against disabled individuals in favor of nondisabled individuals. Thus, Plaintiffs' allegations are insufficient to state a claim under § 504. *See also P.C. v. McLaughlin*, 913 F.2d 1033, 1041 (2d Cir. 1990) (dismissing a claim under § 504 because plaintiff only argued that his needs were not as adequately met as other disabled individuals).

Additionally, both § 504 and Title II of the ADA require a showing that the alleged discrimination occurred "because of" the plaintiff's disability. Both Acts thus require a showing of intentional discrimination. *See Lewis*, 681 F.3d at 315. Plaintiffs have not alleged that the wrongful denials of SGDs stemmed from any intentional discrimination on the part of Defendants. Rather, Plaintiffs only allege that the healthcare provider and ALJ improperly relied solely on Michigan Medicaid's coverage criteria, which does not cover SGDs for habilitative purposes for claimants under the age of twenty-one. *See* Am. Compl. at 14–15. There is no allegation that this misapplication was intentional. Plaintiffs allege only that Defendants'

---

[5] Although the level of discriminatory intent that plaintiff must prove differs between § 504 and Title II of the ADA, Plaintiffs' allegations of discrimination here are insufficient to meet either requirement.

procedures are resulting in healthcare providers having a lack of knowledge about the EPSDT provision, which results in wrongful denials. Defendants' chronic lack of knowledge of the Medicaid manual is insufficient to establish intentional discrimination under either § 504 or Title II of the ADA. *See Anderson v. City of Blue Ash*, 798 F.3d 338, 359 (6th Cir. 2015) (holding that even if the city's procedures for complying with ADA regulations were inadequate and thus had a negative impact on disabled citizens generally, that did "not support the inference that the City's actions were motivated by" the plaintiff's disability); *Thompson v. Williamson Cty.*, 219 F.3d 555, 558 (6th Cir. 2000) (plaintiff's claim under the ADA failed as a matter of law because plaintiff was denied access to medical service due to his violent behavior, not his disability); *Sandison v. Michigan High Sch. Athletic Ass'n, Inc.*, 64 F.3d 1026, 1032–37 (6th Cir. 1995) (holding that there was no showing of discrimination under either § 504 or Title II of the ADA because plaintiff's denial of participation in the program was due to his age, not his disability). Although Defendants concede that these denials are improper, Plaintiffs have failed to allege that the denials are occurring "because of" the claimants' disability.

Plaintiffs have not alleged that the wrongful denials of SGDs stemmed from intentional discrimination on the basis of the claimants' disability. Accordingly, Plaintiffs' claims under § 504 and Title II of the ADA will be dismissed for failure to state a claim.

**F.**

Defendants finally argue, in general terms, that Plaintiffs' remaining claims should be dismissed because Medicaid policy actually does require SGDs to be provided for habilitative purposes to claimants under the age of twenty-one. This argument misconstrues Plaintiffs' allegations. Plaintiffs allege that, notwithstanding the legal requirement that Michigan Medicaid cover SGDs in this context, healthcare providers and ALJs are frequently and mistakenly

denying claims. Alleged "noncompliance" with the EPSDT can be challenged under § 1983. *Westside Mothers v. Haveman*, 289 F.3d 852, 863 (6th Cir. 2002) (finding a private cause of action under § 1983 for alleged violations of the EPSDT). Plaintiffs' allegations of chronic noncompliance with the EPSDT requirement that SGDs be provided to claimants under the age of twenty-one for habilitative purposes state a valid claim under § 1983.

## IV.

Accordingly, it is **ORDERED** that Defendants' Motion to Dismiss, ECF No. 20, is **GRANTED IN PART AND DENIED IN PART.**

It is further **ORDERED** that Plaintiff MV be **DISMISSED** for lack of standing.

It is further **ORDERED** that Counts Four and Five of Plaintiffs' Amended Complaint, ECF No. 17, be **DISMISSED** with prejudice for failure to state a claim.

It is further **ORDERED** that Plaintiffs' Motion for Leave to File a Supplemental Declaration (ECF No. 24) is **DENIED** as moot.

It is further **ORDERED** that Defendants' Motion to File a Supplemental Brief in Response to Plaintiffs' Motion to File a Supplemental Declaration, ECF No. 29, is **DENIED** as moot.

Dated: August 31, 2016                      s/Thomas L. Ludington
                                                  THOMAS L. LUDINGTON
                                                  United States District Judge

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on August 31, 2016.

s/Michael A. Sian
MICHAEL A. SIAN, Case Manager