UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES SOCIETY FOR
AUGMENTATIVE AND ALTERNATIVE
COMMUNICATION, INC.,

    Plaintiff,

v.

NICK LYON, Director, Michigan Department of
Health and Human Services, in his official capacity,
CHRIS PRIEST, Medicaid Director, Medical Services
Administration, Michigan Department of Health and
Human Services, in his official capacity, and
MICHIGAN DEPARTMENT OF HEALTH AND
HUMAN SERVICES,

    Defendants.
    _____/

Case No. 15-cv-13065

Honorable Thomas L. Ludington

**ORDER DENYING MOTION FOR RECONSIDERATION**

    Plaintiffs MV, a minor, and the United States Society for Augmentative and Alternative Communication, Inc. (USSAAC) brought suit under 42 U.S.C. § 1983 against Nick Lyon, the director of the Michigan Department of Health and Human Services, Chris Priest, the Medicaid Director at the Medical Services Administration, and the Michigan Department of Health and Human Services on August 28, 2015. ECF No. 1. Plaintiffs allege that Michigan Medicaid's criteria for coverage of Speech Generating Devices (SGDs) violates the Medicaid Act, 42 U.S.C. § 1396a *et seq.*, § 504 of the Rehabilitation Act, 29 U.S.C. § 794, and Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12131. On May 11, 2016, Defendants filed a motion to dismiss. ECF No. 20. The Court granted that motion in part and denied it in part, dismissing Plaintiff MV for lack of standing and dismissing Plaintiff USSAAC's claims under § 504 of the Rehabilitation Act and Title II of the ADA. ECF No. 30. On September 14, 2016, Plaintiff filed a

motion for reconsideration of the Court's decision to dismiss Plaintiff's claims under the Rehabilitation Act and the ADA. ECF No. 33. The Court directed Defendants to respond. ECF No. 34. For the reasons stated below, Plaintiff's motion for reconsideration will be denied.

## I.

The relevant allegations have been summarized in this Court's August 31, 2016, order granting in part and denying in part Defendant's motion to dismiss. ECF No. 30. That summary will be incorporated as if fully recounted herein.

## II.

Pursuant to Eastern District of Michigan Local Rule 7.1(h), a party can file a motion for reconsideration of a previous order, but must do so within fourteen days. A motion for reconsideration will be granted if the moving party shows: "(1) a palpable defect, (2) the defect misled the court and the parties, and (3) that correcting the defect will result in a different disposition of the case." *Michigan Dept. of Treasury v. Michalec*, 181 F. Supp. 2d 731, 733-34 (E.D. Mich. 2002) (quoting E.D. Mich. LR 7.1(g)(3)). A "palpable defect" is "obvious, clear, unmistakable, manifest, or plain." *Id.* at 734 (citing *Marketing Displays, Inc. v. Traffix Devices, Inc.*, 971 F. Supp. 2d 262, 278 (E.D. Mich. 1997). "[T]he Court will not grant motions for rehearing or reconsideration that merely present the same issues ruled upon by the Court, either expressly or by reasonable implication." E.D. Mich. L.R. 7.1(h)(3). *See also Bowens v. Terris*, No. 2:15-CV-10203, 2015 WL 3441531, at *1 (E.D. Mich. May 28, 2015).

## III.

In its motion for reconsideration, Plaintiff argues that the Court improperly dismissed Counts Four and Five of Plaintiff's Amended Complaint. Plaintiff asserts that there were three palpable defects in the Court's order. First, Plaintiff argues that neither Section 504 nor Title II

requires comparison of access to benefits between people with and without disabilities. Second, Plaintiff argues that plaintiffs seeking injunctive relief under Section 504 and/or Title II do not need to demonstrate intentional discrimination. Third, Plaintiff argues that Plaintiff's claims under Section 504 and Title II are challenging Michigan Medicaid's adoption of discriminatory SGD coverage criteria, not Defendants' past denials of SGD coverage.

**A.**

Plaintiff first argues that the Court improperly relied on *Trayner v. Turnage*, 485 U.S. 535 (1988), in finding that Plaintiff's claims under § 504 and Title II were insufficient because they did not allege that Defendants were discriminating against disabled individuals in favor of nondisabled individuals. In the August 31, 2016, order, the Court stated that "[t]he 'central purpose' of § 504 is to ensure that 'handicapped individuals receive 'evenhanded treatment' in relation to nonhandicapped individuals.'" Op. & Order at 19, ECF No. 30 (quoting *Traynor*, 485 U.S. at 548). Plaintiff quotes *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 598 (1999), for the proposition that a claim under Title II can exist even if there is no showing that a similarly situated individual was given preferential treatment. The primary thrust of the *Olmstead* decision is that the "unjustified institutional isolation of persons with disabilities is a form of discrimination," *Id.* at 600. And the *Olmstead* Court did, in fact, discuss the fact that dissimilar treatment of disabled individuals does occur when they are unjustly institutionalized. *See id.* at 601 ("Dissimilar treatment correspondingly exists in this key respect: In order to receive needed medical services, persons with mental disabilities must, because of those disabilities, relinquish participation in community life they could enjoy given reasonable accommodations, while persons without mental disabilities can receive the medical services they need without similar sacrifice."). However, Plaintiff's point is well taken. The reasoning in *Traynor* which focuses on

discrimination against disabled individuals in favor of nondisabled individuals has been undermined by *Olmstead* and subsequent courts of appeal decisions. *See Amundson ex rel. Amundson v. Wisconsin Dep't of Health Servs.*, 721 F.3d 871, 874 (7th Cir. 2013) (collecting cases). *But see Parker v. Metro. Life Ins. Co.*, 121 F.3d 1006, 1019 (6th Cir. 1997) (a pre-*Olmstead* decision which follows *Traynor* in holding that the ADA and Rehabilitation act only prohibit discrimination between the disabled and non-disabled). Although the Sixth Circuit has not explicitly overruled *Parker* or rejected *Traynor*, the Supreme Court's decision in *Olmstead* has rejected that reasoning.[1] Thus, *Traynor* will not be relied upon as a basis for the Court's dismissal of Plaintiff's claims under § 504 and Title II.

**B.**

However, the Court's opinion and order relied only in part on *Traynor* in dismissing Plaintiff's claims under § 504 and Title II. Plaintiff further argues that the Court committed a palpable error in its alternative ground by stating that Plaintiff was required to allege "intentional discrimination." Plaintiff argues that proof of intentional discrimination is not required for injunctive relief. In support of that argument, Plaintiff cites *Ability Ctr. of Greater Toledo v. City of Sandusky*, where the Sixth Circuit held that "Title II does more than prohibit public entities from intentionally discriminating against disabled individuals. It also requires that public entities make reasonable accommodations for disabled individuals so as not to deprive them of meaningful access to the benefits of the services such entities provide." 385 F.3d 901, 907 (6th Cir. 2004).

Although Plaintiff characterizes *Ability Center* as standing for the proposition that intentional discrimination need not be demonstrated by plaintiffs seeking injunctive relief under

---

[1] As discussed below, however, there remains a comparative aspect to the § 504 and Title II analysis in the context of disparate-impact claims.

§ 504 and Title II, Sixth Circuit precedent draws a different distinction. Rather, the Sixth Circuit has distinguished intentional discrimination claims from disparate-impact and reasonable-accommodation claims. *See Everson v. Leis*, 412 F. App'x 771, 784 n.6 (6th Cir. 2011) (Moore, J., dissenting). Although it is unclear "whether a reasonable-accommodation claim under Title II is a viable claim separate from a disparate-treatment or disparate-impact type claim,"[2] several cases draw that distinction. *Id.*, 412 F. App'x at 784 n.6 (citing *Tucker v. Tennessee*, 539 F.3d 526, 532 (6th Cir. 2008); *Dillery v. City of Sandusky*, 398 F.3d 562, 568 (6th Cir. 2005)). Likewise, several other circuits have held that claims for reasonable accommodation under Title II are separate from intentional discrimination claims. *See id.* (citing *Wis. Cmty. Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 751 (7th Cir. 2006); *Henrietta D. v. Bloomberg*, 331 F.3d 261, 275 (2d Cir. 2003)). Under reasonable accommodation claims, the plaintiff must still show that "the reason for his [or her] deprivation is his disability." *Wis. Cmty. Servs.*, 465 F.3d at 751. Even if Plaintiff is advancing a reasonable accommodation or disparate-impact claim, however, Plaintiff's allegations are insufficient to state a claim.

First, Plaintiff's Complaint does not include allegations or requests related to a reasonable-accommodation claim. *See* Compl. ECF No. 17, at ¶¶ 70–88 (alleging that Michigan Medicaid "discriminates against qualified individuals with disabilities solely on the basis of" the nature and severity of their disabilities because beneficiaries with acquired speech impairments can receive SGDs). "In ADA cases, the plaintiff bears the burden of establishing the elements of the prima facie case, including—if needed—'the existence of a reasonable accommodation' that

---

[2] Disparate-treatment cases require proof that the disability actually motived the discriminatory behavior. *Raytheon Co. v. Hernandez*, 540 U.S. 44, 52, 124 S. Ct. 513, 519, 157 L. Ed. 2d 357 (2003). As the Court's August 31, 2016, order made clear, Plaintiff has not adequately alleged intentional discrimination. Plaintiff attempts to argue that Defendants' actions constitute deliberate indifference. But the allegations in Plaintiff's complaint do not allege that the coverage denials result from a deliberate decision by Defendants to do nothing or ignore the plight of Plaintiff's members. Rather, and as discussed elsewhere in this order, Defendants have consistently remediated wrongful denials.

would enable him to participate in the program, service, or activity at issue." *Ability Ctr. of Greater Toledo v. Lumpkin*, 808 F. Supp. 2d 1003, 1024 (N.D. Ohio 2011). At best, the Complaint alleges that Defendant's coverage criteria has a disparate-impact on disabled individuals under the age of twenty-one who need SGDS for habilitative purposes, as opposed to disabled individuals who need SGDs for rehabilitative or prosthetic purposes. Plaintiff does not allege that Defendants have refused to make a reasonable accommodation. Thus, Plaintiff has not met its burden of alleging the existence of a reasonable accommodation.

Further, even if Plaintiff's Complaint is broadly construed as requesting an accommodation, Plaintiff has not adequately alleged a reasonable accommodation claim. Defendants have admitted that EPSDT requires coverage of SGDs for beneficiaries like MV. As Plaintiff's Complaint states, Defendants provided MV with an SGD after the lawsuit was commenced. Compl. at 5, n.3. More importantly, Defendants have clarified Michigan Medicaid's policies regarding SGD coverage. *See* ECF No. 35, Ex. B.[3] Accordingly, no accommodation is necessary because Defendants have already provided a reasonable accommodation. *See Henrietta D.*, 331 F.3d at 282 (2d Cir. 2003) ("There would be no need for injunctive relief if the plaintiffs were already being reasonably accommodated."); *Fialka-Feldman v. Oakland Univ. Bd. of Trustees*, 678 F. Supp. 2d 576, 582 (E.D. Mich. 2009) ("An accommodation is necessary when 'the rule in question, if left unmodified, hurts handicapped people *by reason of their handicap*.'") (quoting *Sutton v. Piper*, 344 Fed. App'x. 101, 102 (6th Cir.2009) (emphasis in

---

[3] Although exhibits to filings may not typically be considered when addressing motions to dismiss, a defendant may introduce, and a court may consider "certain pertinent documents if the plaintiff fails to do so." *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997). "Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document upon which it relied." *Id.* If a document is referred to in the plaintiff's complaint and central to her claim, it may be considered. *Id.* Here, Plaintiff's Complaint repeatedly references the Michigan Medicaid statutory and regulatory scheme. Because Plaintiff's entire claim is that Michigan Medicaid's coverage provisions discriminate against MV and similar beneficiaries, portions of the Michigan Medicaid statutory and regulatory scheme which show that Plaintiff's representation of the scope of Michigan Medicaid coverage is inaccurate are incorporated through reference and are clearly central to Plaintiff's claims. *See id.*

original)). Because USSAAC's members are unlikely to benefit from additional accommodation, Plaintiff has not stated a reasonable-accommodation claim. *See Alexander v. Choate*, 469 U.S. 287, 300 (1985) (citing *Southeastern Community College v. Davis*, 442 U.S. 397, 413 (1979) (holding that a college was not required to modify a program because the plaintiff appeared unlikely to benefit from any modification)).

Likewise, Plaintiff has not adequately alleged a disparate impact claim. To begin with, it is unclear whether a disparate-impact cause of action under the Rehabilitation Act is available in the Sixth Circuit. *See Crocker v. Runyon*, 207 F.3d 314, 320 (6th Cir. 2000) ("[T]his circuit has not explicitly recognized the availability of a disparate impact cause of action under the Rehabilitation Act."). *See also Rumburg v. Sec'y of the Army*, No. 10-11670, 2011 WL 1595067, at *11 (E.D. Mich. Apr. 27, 2011) (citing *Crocker* and noting that this question is still unresolved). *But see Alexander v. Choate*, 469 U.S. 287, 299, 105 S. Ct. 712, 719, 83 L. Ed. 2d 661 (1985) (assuming without deciding that § 504 reaches some conduct that has an unjustifiable disparate impact upon the handicapped); *Ability Ctr. of Greater Toledo*, 385 F.3d 901, 904 n.4 (6th Cir. 2004) (affirming a district court that granted relief under Title II of the ADA pursuant to a disparate-impact theory, but declining to distinguish between reasonable-accommodation and disparate-impact causes of action). Regardless, because most § 504 and Title II cases involve either claims of intentional discrimination or requests for reasonable accommodation, the standard for asserting a disparate-impact claim under the ADA and Rehabilitation Act in the Sixth Circuit is unclear. Other Circuits, however, make clear that a disparate-impact claim under the ADA and Rehabilitation Act includes a comparative element. *See Henrietta D.*, 331 F.3d at 276 (collecting cases). And more importantly, § 504 does not guarantee "the handicapped equal results from the provision of state Medicaid." *Alexander*, 469 U.S. at 304. Rather, § 504 claims

which allege a disparate-impact must focus on the "formal legal eligibility requirements" of the program, not "the administration of the program." *Henrietta D.*, 331 F.3d at 277.

Here, Plaintiff's members clearly have a legal entitlement to SGDs under existing Michigan Medicaid provisions. Plaintiff argues in its motion for reconsideration that the Complaint is challenging Defendants' discriminatory coverage criteria and not Defendants' misapplication of that criteria. But that argument is clearly inconsistent with the remainder of Plaintiff's Complaint and with Plaintiff's previous arguments. After Defendants argued in their motion to dismiss that Michigan Medicaid provisions actually do provide the SGD coverage Plaintiff was alleging does not exist, Plaintiff responded that "[h]idden or remote criteria in Defendants' EPSDT policy that have no operational effect on SGD decision making have no bearing on this claim. What matters is how Defendants' SGD coverage criteria and EPSDT policy actually are interpreted and implemented by Defendants and their agents." Resp. Mot. Dismiss at 6, ECF No. 22. Further, Plaintiff alleges in its Complaint that it has successfully assisted members who were wrongfully denied SGDs in receiving the devices. *See* Compl. at 4–5 ("In the past three years, USSAAC's Advocacy Director has spent approximately 100 to 150 hours helping these USSAAC members and other Michigan Medicaid beneficiaries younger than twenty-one whose requests for Speech Generating Devices were denied for the same reasons . . . . Each of these individuals now has a Speech Generating Device as a result of USSAAC's efforts on his or her behalf."). If Plaintiff's members were not legally entitled to SGDs under Michigan Medicaid, then Plaintiff's internal appeals would not have been successful. Plaintiff has tacitly admitted in its Complaint and pleadings before the Court that Michigan Medicaid does require coverage of SGDs in the circumstances presented here, and is alleging instead that Defendants have chronically misapplied those provisions.

Thus, Plaintiff's assertion is that Defendants are chronically and improperly denying SGDs to beneficiaries that are clearly entitled to the devices under the EPSDT. Assuming that to be true, Plaintiff is merely alleging that Defendants are administering the program improperly. That allegation might form the basis for a reasonable accommodation argument, but as already discussed, Plaintiff has not adequately alleged a reasonable accommodation cause of action. Plaintiff's members are legally entitled to SGD coverage and thus any non-coverage experienced is the result of administrative errors, not illegal discrimination. *See Doe v. Pfrommer*, 148 F.3d 73, 84 (2d Cir. 1998) ("[W]hat Doe ultimately seeks to challenge is not illegal discrimination against the disabled, but the substance of the services provided to him."); *Flight v. Gloeckler*, 68 F.3d 61, 64 (2d Cir. 1995) ("[C]hallenges to the allocation of resources among the disabled under the Rehabilitation Act are disfavored."). *See also Henrietta D.*, 331 F.3d at 276 (noting that the reasoning in *Olmstead* which rejects comparisons between the disabled and the non-disabled does not eliminate the comparative element of disparate-impact claims). Because Plaintiff's members are legally entitled to SGDs, Plaintiff has not alleged that the Michigan Medicaid coverage provisions disparately impact disabled individuals. Plaintiff's claims under § 504 and Title II are inadequately pleaded to the extent they advance disparate treatment claims.

In short, the Court's previous order clearly established that Plaintiff has not adequately pleaded intentional discrimination sufficient to state a claim under § 504 and Title II. To the extent Plaintiff argues that Defendants have refused to reasonably accommodate Plaintiff's members in Defendants' administration of the Michigan Medicaid coverage, Plaintiff has not stated a claim. It is unclear whether Plaintiff can even assert a distinct disparate-impact claim under Sixth Circuit law. But to the extent that Plaintiff is attempting to allege a disparate-impact claim based on the legal provisions of Michigan Medicaid, Plaintiff's allegations and arguments

establish that its members are legally entitled, under the EPSDT, to the SGDs. The administration of a program cannot be challenged via a disparate-impact claim pursuant to § 504, and so Plaintiff has not stated a claim alleging disparate-impact.

Because the revised, comprehensive analysis of Plaintiff's claims for relief under § 504 and Title II does not result in a different outcome, Plaintiff's motion for reconsideration will be denied.

### IV.

Accordingly, it is **ORDERED** that Plaintiff's motion for reconsideration, ECF No. 33, is **DENIED.**

Dated: November 4, 2016             s/Thomas L. Ludington
                                    THOMAS L. LUDINGTON
                                    United States District Judge

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on November 4, 2016.

s/Michael A. Sian
MICHAEL A. SIAN, Case Manager